UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED FARM WORKERS *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-0062 (RMU) |
| | : | | |
| v. | : | Document No.: | 2 |
| | : | | |
| ELAINE L. CHAO, | : | | |
| in her official capacity as Secretary of the | : | | |
| U.S. Department of Labor *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>MEMORANDUM OPINION</u>

DENYING THE PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

I.   INTRODUCTION

This case is before the court on the plaintiffs' motion for a temporary restraining order ("TRO") and preliminary injunction. The plaintiffs, two farm workers' unions and eight individual farm workers, ask the court to postpone the effective date of a Final Rule announced by the Department of Labor ("DOL") on December 18, 2008. Without court intervention the Final Rule will become effective on January 17, 2009. Because the plaintiffs have failed to make a showing of likely, imminent and irreparable harm, the court denies the plaintiffs' motion.

II.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs United Farm Workers and Pineros y Campesinos Unidos del Noroeste ("PCUN") are farm workers' unions that advocate for and promote the employment rights of farm workers. Compl. ¶ 4-5. The individual plaintiffs comprise two distinct groups of farm

workers: U.S. citizens and non-citizens who hold H-2A "guestworker" visas.[1]  *Id.* ¶¶ 6-14.  The defendants are the DOL and the Department of Homeland Security and their respective Secretaries.

The DOL is charged with overseeing the H-2A visa program, 8 U.S.C. § 1188, and it issues regulations to carry out this mandate, *see* 20 C.F.R. §§ 655.90-655.113.  On December 18, 2008, the DOL announced the Final Rule modifying and updating its regulations with regard to domestic and H-2A farm workers.  *See* 73 Fed. Reg. at 77110-239.  The plaintiffs contest the legality of certain provisions, specifically the attestation process for H-2A applications,[2] Pls.' Mot. at 6-11; the formula for determining the "adverse effect wage rate,"[3] Pls.' Mot. at 11-23; the change in the "50% Rule,"[4] Pls.' Mot. at 24-26; the possibility of wage discrimination

---

[1] The H-2A visa program extends temporary visas to nonimmigrant foreign workers who "hav[e] a residence in a foreign country which [they] ha[ve] no intention of abandoning [and] who [are] coming [] to the United States to perform agricultural labor or services . . . of a temporary or seasonal nature."  8 U.S.C. § 1101(a)(15)(H)(ii)(a).

[2] The plaintiffs argue that the attestation process violates the H-2A governing statute, 8 U.S.C. 188(a)(1)(A).  Pls.' Mot. at 6-11; Defs.' Opp'n at 14-21.

[3] Employers must pay farm workers "at least the adverse effect wage rate . . . the prevailing hourly wage rate, or the legal federal or State minimum wage rate, whichever is highest."  20 C.F.R. § 655.102(b)(9)(i).  Under the current regulations the DOL has calculated the adverse effect wage rate using the United States Department of Agriculture Farm Labor Survey.  Defs.' Opp'n at 7.  The new regulations would utilize the Occupational Employment Statistics Program data.  *Id*. at 22.

[4] 8 U.S.C. § 1188(c)(3)(B)(i) establishes that "the employer will provide employment to any qualified worker who applies to the employer until 50 percent of the period of the work contract, under which the foreign worker who is in the job was hired, has elapsed."  Under the new regulations employers would only be required to hire qualified U.S. workers within the first 30 days after the first date the employer requires the services of H-2A workers.  73 Fed. Reg. 77214-15.

against U.S. workers,[5] Pls.' Mot. at 23-24; the modification of the housing inspection timeline,[6] Pls.' Mot. at 32-34; the change in recruitment requirements,[7] Pls.' Mot. at 28-32; and the alteration in the transportation reimbursement language,[8] Pls.' Mot. at 34-38.  The plaintiffs filed a complaint and a motion for a TRO and preliminary injunction on January 12, 2009.  The court turns now to the plaintiffs' motion.

### III.   ANALYSIS

#### A.   Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365,

---

[5]   The plaintiffs argue that, under the new regulation, some U.S. workers may make less than their H-2A counterparts.  Pls. Mot. at 24

[6]   Currently inspections of housing for farm workers must be completed pre-occupancy.  Defs.' Opp'n at 37.  The new regulations allow for inspections to occur post-occupancy.  *Id*. at 38.

[7]   Employers must engage in active recruitment of U.S. workers up until the time that H-2A "workers have departed for the employer's place of employment."  20 C.F.R. § 655.100(b).  The employer's recruitment efforts should be geographically relevant and meet or exceed the efforts by that employer to recruit H-2A workers.  *Id.* §§ 655.100(b), 655.103(f), 655.105(a).  The plaintiffs aver that the new regulations will narrow the scope and enforceability of an employer's recruitment efforts.  Pls.' Mot. at 29-30.

[8]   Currently employers must reimburse a H-2A worker his or her transportation costs "from the place from which the worker has come" if the worker works half the season, and must reimburse an H-2A worker his or her inbound and outbound costs if the worker works the full season.  20 C.F.R. § 655.102(b)(5)(i).  In the past the phrase "the place from which the worker has come" has been interpreted to mean that worker's home.  Pls.' Mot. at 34-35.  The new regulations will interpret that phrase to mean a U.S. Consulate or port of entry rather than the worker's home.  73 Fed. Reg. at 77151.

374 (2008) (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218-19 (2008)).  It is particularly important for the movant to demonstrate a likelihood of success on the merits.  *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review."  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury.  A movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Winter*, 129 S. Ct. at 375 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)).  Indeed, if a party fails to make a sufficient showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1986) (stating that because the movant "has made no showing of irreparable injury here, that alone is sufficient for us to conclude that the district court did not abuse its discretion by rejecting [the movant's] request.  We thus need not reach the district court's consideration of the remaining factors relevant to the issuance of a preliminary injunction").  The plaintiffs here assert likely economic loss as grounds for the irreparable harm they allege.  Pls. Mot. at 38-41.  It is well-settled that economic loss alone will rarely constitute irreparable harm.  *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985); *Barton v. D.C.*, 131 F. Supp. 2d 236, 247 (D.D.C. 2001) (Urbina, J.).  In the business context, however, the well-settled exception to the rule is that if the potential harm could threaten the very existence of the business, a court may deem such harm irreparable.  *E.g., Wis. Gas Co.*, 758 F.2d at 674.  Similarly, while an employer's discharge or constructive

discharge of an employee will rarely constitute irreparable harm, courts routinely make exceptions when an employee is so poor that if she stopped working, the consequences would be severe. For instance, in *Hamlyn v. Rock Island County Metro. Mass Transit Dist.*, the court held that:

> The rule is clear: monetary loss does not constitute an irreparable injury because a successful plaintiff can be adequately compensated at the conclusion of the litigation. There are four possible exceptions to this rule: (1) the plaintiff is so poor that he would be harmed in the interim by the loss of the monetary benefits; (2) the plaintiff would be unable to finance his lawsuit without the money he wishes to recover; (3) the damages would be unobtainable from the defendant because it will be insolvent prior to the final judgment; and (4) the nature of the plaintiffs' loss may make damages very difficult to calculate.

960 F. Supp. 160, 162 (C.D. Ill. 1997) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1994)) (internal citations omitted); *see also Chapman v. South Buffalo Ry. Co.,* 43 F. Supp. 2d 312, 318 (W.D.N.Y. 1999); *Williams v. State Univ. of N.Y.*, 635 F. Supp. 1243, 1248 (E.D.N.Y. 1986) (explaining that "the plaintiff must quite literally find himself being forced into the streets or facing the spectre of bankruptcy before a court can enter a finding of irreparable harm").

Provided the plaintiff demonstrates a likelihood of success on the merits and of irreparable injury, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987). Finally, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

As an extraordinary remedy, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Supreme Court has observed "that a preliminary

injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

### B. Because the Plaintiffs Fail to Demonstrate Irreparable Injury the Court Denies the Plaintiffs' Motion for a TRO

The plaintiffs allege that, if the new regulations go into effect on January 17, 2009, they will be irreparably harmed and cite to declarations prepared by several farm workers, some of whom are individual plaintiffs in this case. Pls.' Mot. at 38-41. The defendants retort that the plaintiffs have shown only "speculative and conjectural" injury. Defs.' Opp'n at 40.

For example, plaintiff Luan Kongsaen, whose H-2A petition is pending, stated that he has been told that his wages *may be* cut from $9.70 per hour to $7.18 per hour. Pls.' Mot., Ex. 12 ("Kongsaen Decl.") ¶ 6, 9-10. Alberto Perez-Elotlan declared that he understands that the new regulations would decrease his wages and that he will "probably not [have] enough money [] to send all of [his] children to school." Pls.' Mot., Ex. 27 ("Perez-Elotlan Decl.") ¶ 4. Alejandro Martinez-LoBacto claimed that he has "been informed that new regulations will substantially lower [his wages, and he has] been told that [his] hourly wage will drop." Pls.' Mot., Ex. 24 ("Martinez-LoBacto Decl.") ¶ 11. Hector Manuel Zanella-Alvarez stated that he has "been told that [his] hourly wage will drop . . . [and he is] not sure that it will be possible for [his family] to pay [] rent, or to pay for basic necessities." Pls.' Mot., Ex. 28 ("Zanella-Alvarez Decl.") ¶¶ 9-10. Faylean Noles explained how he benefitted under the old regulations but did not extrapolate how

6

this would cause him imminent injury if the new rules were to go into effect. Pls.' Mot., Ex. 29 ("Noles Decl.") ¶¶ 6-7. The defendants attack the plaintiffs' assertions of irreparable harm as "speculative and conjectural." Defs.' Opp'n at 40. The defendants further assert that the statements made in many of the declarations are "conclusory." Defs.' Opp'n at 44.

The law in this circuit is clear that the alleged irreparable injury "must be both certain and great; it must be actual and not theoretical." *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). The plaintiffs must show more than a possibility of injury; they must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375 (internal citations omitted) (emphasis in original). Given the uncertainty of the declarants' statements and the indefinite language in which those sentiments are presented, the court cannot hold that these declarants are likely to suffer an actual and imminent harm. *Id.*; *Wis. Gas Co.*, 758 F.2d at 674.

The plaintiffs also provide a declaration from an attorney with the Northwest Justice Program who represents farm workers and explained how the current certification process in reviewing employer H-2A applications has been successful. Pls.' Mot., Ex. 5 ("Besso Decl.") ¶¶ 2-3. She went on to state that, under the new regulations, "it would appear" that "consideration of information about local wages and working conditions from the state employment agency" would be precluded. *Id.* ¶ 4. Besso stated simply that "it would appear" that information she believes to be relevant and important may be precluded from review. *Id.* She gives no concrete foundation or examples to support this conclusion. *See generally id.* Injunctive relief will not be granted "against something merely feared as liable to occur at some indefinite time in the future." *State of Conn. v. Com. of Mass.*, 282 U.S. 660, 674 (1931). Declarations from the

National Vice President of United Farm Workers, Pls.' Mot., Ex. 30 ("Nicholson Decl."), and President of PCUN, Pls.' Mot., Ex. 31 ("Ramirez Decl.") use similarly indeterminate language.[9] Ramirez stated, "we *anticipate* that usage by employers of the H-2A program will increase substantially under the new regulations . . . [and] we *believe* that employers will bring in increasing numbers of [H-2A workers] at low wages."  Ramirez Decl. ¶ 4.a. (emphasis added). He went on to aver that "domestic workers who *may* soon be employed by H-2A employers[] *could* suffer a drastic and immediate reduction in wages."  *Id*. ¶ 4.b. (emphasis added). Nicholson's statements are even more speculative: "[u]nder the new regulations employer *can choose* to pay [a wage lower than the average hourly wage for that area], the Level I wage," and "*[a]ssuming* many employers *will choose* to pay the Level I wage, our members in this area will suffer drastic wage cuts of roughly 13%."  Nicholson Decl. ¶ 3.a. (emphasis added).

The plaintiffs have not presented sufficient evidence that any plaintiff is likely to suffer immediate decreased wages, increased transportation costs or loss of employment.  Based on the speculative injuries alleged by the plaintiffs the court cannot conclude that the plaintiffs have met the "high standard for irreparable injury" sufficient to warrant the extraordinary relief of a TRO.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  As such, the court need not address the other factors of injunctive relief.  *CityFed Fin. Corp.*, 58 F.3d at 747 (stating that because the movant did not establish irreparable injury the court need not reach the other factors relevant to the issue of injunctive relief).

---

[9]   Although the defendants do not address these three declarations in their opposition, the court finds them noteworthy.

## IV.   CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for a TRO and preliminary injunction.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 15th day of January 2009.

                                             RICARDO M. URBINA
                                             United States District Judge