UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED FARM WORKERS *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-0062 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 41 |
| | : | | |
| HILDA L. SOLIS, | : | | |
| in her official capacity as Secretary of the | : | | |
| U.S. Department of Labor, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

### DENYING THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This action is before the court on the plaintiffs' motion for partial summary judgment. The plaintiffs, two farm workers' unions and eight individual farm workers, contend that the defendant, Department of Labor ("DOL") violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, when it promulgated the most recent adverse effect wage rate ("AEWR") provisions of the H-2A foreign agricultural-worker program. The court denies the plaintiffs' motion for partial summary judgment because the plaintiffs have failed to demonstrate that the DOL's actions were arbitrary, capricious, an abuse of discretion or not in accordance with any law. The court also orders further briefing on the status of the plaintiffs' claims addressed in this motion.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Statutory Framework

Under the Immigration and Nationality Act ("INA"), foreign workers hired to perform temporary agricultural work in the United States can be granted H-2A non-immigrant status, through a program that extends temporary visas to nonimmigrant foreign workers who "hav[e] a residence in a foreign country which [they] ha[ve] no intention of abandoning [and] who [are] coming [] to the United States to perform agricultural labor or services . . . of a temporary or seasonal nature." 8 U.S.C. § 1101(a)(15)(H)(ii)(a). Congress delegated the certification of H-2A petitions to the Secretary of Labor. *Id*. § 1188. Agricultural employers may bring foreign H-2A workers into the United States to perform agricultural labor for a period of up to ten months, *id*. § 1101(a)(15)(H)(ii)(a), but must certify that there are insufficient U.S. workers "who are able, willing, and qualified" to perform the work for which the foreign workers are being recruited to perform, *id*. § 1188(a)(1)(A), and that the employment of H-2A workers "will not adversely affect the wages and working conditions of workers in the United States similarly employed," *id*. § 1188(a)(1)(B). An employer who wishes to hire H-2A workers must submit an application to the DOL specifying, among other information, the description of the work to be performed, the number of workers to be hired and the dates for which the H-2A workers will be hired to work. 20 C.F.R. § 655.101. To ensure that the wages of U.S. workers will not be adversely affected by H-2A workers, the DOL utilizes AEWRs,[1] 54 Fed. Reg. 28,037 (July 5, 1989), which, until 2009, were calculated using the Department of Agriculture's Farm Labor Survey ("FLS"), *id*. at 28,040.

---

[1] AEWRs are "the minimum wage that employers who wish to hire aliens as temporary agricultural workers must offer American and foreign workers." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Dole*, 923 F.2d 182, 183 (D.C. Cir. 1990).

On February 13, 2008, the DOL proposed changes to the rules governing the H-2A program. Defs.' Opp'n at 2; *see also* 73 Fed. Reg. 8,538 (Feb. 13, 2008). The DOL invited comments on alternative methods of calculating AEWRs and ultimately chose to change the methodology to use data garnered by the Bureau of Labor Statistics's Occupational Employment Survey ("OES") rather than the FLS data. 73 Fed. Reg. at 8,550. The DOL also established a four-level system for the calculating AEWRs based on the skill level of the particular job. *Id*. at 77,176-77. The DOL noted that the new four-level system would "add further precision to the AEWRs." *Id*. On December 18, 2008, the DOL issued a final rule ("the December 2008 Rule") revising the H-2A program. *See* 73 Fed. Reg. 77,110 (Dec. 18, 2008). The AEWR methodology and the changes thereto were addressed in detail in the preamble to the December 2008 Rule. *Id*. at 77,170-76.

**B. The Parties**

Plaintiffs United Farm Workers and Pineros y Campesinos Unidos del Noroeste ("PCUN") are farm workers' unions that advocate for and promote the employment rights of farm workers. Compl. ¶ 4-5. The individual plaintiffs comprise two distinct groups of farm workers: U.S. citizens and non-citizens who hold H-2A visas. *Id.* ¶¶ 6-14. The defendants are the DOL and the Department of Homeland Security and their respective Secretaries. Intervenor, North Carolina Growers' Association, Inc. ("NCGA") "is a non-profit association whose sole purpose is to process H-2A applications and related paperwork for its members, provide assistance to its members in complying with the H-2A program, and to serve as a political advocate, where needed, for its members' interests." NCGA Mot. to Intervene at 3. NCGA has "more than 700 member farmers who employ approximately 6,500 H-2A workers per year." *Id*.

## C. Procedural History

On January 12, 2009, the plaintiffs filed a complaint in this court along with a motion for a temporary restraining order and preliminary injunction to enjoin the implementation of the December 2008 Rule. *See generally* Compl.; Pls.' Mot. for Prelim. Inj. The court denied the plaintiffs' motion for a temporary restraining order and preliminary injunction, concluding that the plaintiffs had failed to demonstrate irreparable harm. *See generally* Mem. Op. (Jan 15, 2009).

On May 29, 2009, the DOL announced that it was suspending the December 2008 Rule, to potentially reconsider a number of provisions, including the changes to the AEWR methodology. 74 Fed. Reg. 25,972-73 (May 29, 2009). The DOL explained that it had "encountered a number of operational challenges which . . . prevent[ed] the full, effective and efficient implementation of the [December 2008 Rule]." *Id.*; *see also* Pls.' Mot. at 3. The suspension was scheduled to go into effect on June 29, 2009, but the District Court for the Middle District of North Carolina preliminarily enjoined the DOL from implementing the suspension. *See N.C. Growers' Ass'n v. Solis*, 644 F. Supp. 2d, 664 (M.D.N.C. 2009).

On June 21, 2009, the plaintiffs filed this motion for partial summary judgment on their claim challenging the DOL's use of the OES data to calculate the AEWR and the implementation of the four-level system. *See generally* Pls.' Mot. The plaintiffs allege that the DOL's use of the OES data to set the AEWR and utilization of the four-level system violates the

INA and the APA. *See generally id.* As the motion is now fully briefed,[2] the court turns to the applicable legal standard and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for Judicial Review of Agency Actions

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702. Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

---

[2] NGCA filed its motion to intervene on March 11, 2009. *See generally*, NCGA Mot. to Intervene. The court granted NCGA's motion to intervene on February 19, 2010. *See* Minute Order (Feb. 19, 2010). On July 6, 2009, prior to being granted intervenor status, NCGA filed an opposition to the plaintiffs' motion for partial summary judgment. *See generally* NCGA Opp'n. Because NCGA's opposition was filed before NCGA became a party to this case and makes nearly identical arguments to the defendants' opposition, the court cites only to the defendants' opposition throughout this memorandum opinion.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (noting that "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

### B. The Court Denies the Plaintiffs' Motion for Partial Summary Judgment

The plaintiffs contend that the DOL violated the APA when it chose to rely on the OES instead of the FLS data in calculating the AEWR. *See* Pls.' Mot. at 14-21. The plaintiffs allege that by adopting the OES as a basis for the AEWR calculation, the DOL contravened "Congress' requirement that H-2A applications be certified only upon a finding of no adverse effect on 'similarly employed' U.S. workers." *Id*. at 13. The plaintiffs also allege that the DOL failed to consider valid alternatives or provide a logical explanation for its decision. *Id*. at 13-14. The defendants retort that the preamble to the December 2008 Rule clearly explains why the DOL believed that the OES data was superior under the circumstances and explained its rejection of alternative methods. Defs.' Opp'n at 6. The defendants argue that the DOL is entitled to deference in its decision making. *Id*. at 6-8.

In determining whether an agency proffers a permissible interpretation of a statute it administers, the court employs the two-step *Chevron* analysis. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). The court "must first exhaust the

traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue." *Natural Res. Def. Council, Inc. v. Browner*, 57 F.3d 1122, 1125 (D.C. Cir. 1995). If, after applying accepted canons of construction, the court determines that Congress has spoken to the precise issue, "then the case can be disposed of under the first prong of *Chevron*." *Halverson v. Slater*, 129 F.3d 180, 184 (D.C. Cir. 1997). If the court determines that the statute is silent or ambiguous with regard to the issue, however, the second prong of *Chevron* directs the court to defer to a permissible agency construction of the statute. *Id.*

As an initial matter, both parties agree that the December 2008 Rule resulted from the DOL's interpretation of the INA, bringing this case within the ambit of *Chevron*. *See* Pls.' Mot at 13; Defs.' Opp'n at 7. The parties disagree, however, on exactly which two words in the statute are at issue. The plaintiffs contend that the defendants impermissibly interpreted the phrase "similarly employed," *see generally* Pls.' Mot.; Pls.' Reply, while the defendants focus their opposition on defending their interpretation of the phrase "adversely affect," *see generally* Defs.' Opp'n. This Circuit has already determined that "Congress did not . . . define adverse effect and left it in the [DOL's] discretion how to ensure that the importation of farmworkers met the statutory requirements." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Dole*, 923 F.2d 182, 184 (D.C. Cir. 1991). Moreover, although the plaintiffs state that the phrase "similarly employed" has a precise statutory meaning leaving no room for ambiguity,[3] *see* Pls.' Reply at 4, they cite no authority for this definition, *see generally id.*, nor is the court aware of any such definition in either the statute or the applicable case law. Thus, regardless of which phrase is at issue, Congress has not offered a definition sufficient to end the court's analysis at this point. The court, accordingly, moves to the second step of the *Chevron* analysis.

---

[3] Specifically, the plaintiffs proffer that the statute defines "similarly employed" as "workers employed in the United States farming industry to perform unskilled agricultural labor." Pls.' Reply at 4.

7

To satisfy the second prong of *Chevron*, the DOL was required to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). In the preamble to the December 2008 Rule, the DOL stated specifically that its research led it to conclude that the AEWRs should be based on local wage conditions. *See* 73 Fed. Reg. at 77,171 (noting that "there is reason to believe that in some geographic areas and for some occupations, current AEWRs are set artificially low"); *id.* at 77,172 (explaining that "[b]ecause the [FLS] survey that is currently used is an average wage rate that is set across the board, typically multi-state regions, the actual wages of individual labor markets within the [FLS] regions are necessarily in some instances above, and in some instances below, the [FLS] average"); *id.* (stating that the DOL "continues to believe that precise tailoring of H-2A wages to local labor market conditions is the most critical factor in preventing an adverse effect on the wages of U.S. workers"). The DOL then provided a precise explanation of why the OES is superior to the FLS for the purpose of furthering these objectives. *See id*. at 77,173 (concluding that "AEWRs derived from OES survey data will be more reflective of actual market wages than FLS data, and thus will best protect the wages and working conditions of U.S. workers from adverse effects"); *id*. (explaining that the FLS "aggregation of a widely diverse national agricultural landscape into just 15 regions (and 3 stand-alone states) results in extremely broad generalizations that fail to account for specific market conditions at the local level"); *id*. (outlining the "problems for functional program administration" connected with use of FLS data, including a lack of "refined wage data by occupations or geographic locale," the fact that the FLS data is not based on hourly wage rates and the fact that the DOL has "no direct control over [the] design and

8

implementation" of the FLS survey). Based on the DOL's lengthy and reasoned analysis, the court determines that the DOL "has offered an explanation that is reasonable and consistent with the regulation's language and history," thus supporting the DOL's objectives. *Trinity Broad. of Fla., Inc. v. Fed. Commc'ns Comm'n*, 211 F.3d 618, 627 (D.C. Cir. 2000).

Turning to the plaintiffs' contention that the DOL failed to consider alternative methods for calculating the AEWR, *see* Pls.' Mot. at 21, the court notes that an agency's failure to consider alternatives or to provide an explanation for rejecting those alternatives can render its ultimate decision arbitrary and capricious, *see Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 815 (D.C. Cir. 1983). The record indicates, however, that the DOL did consider alternatives to the OES and, in fact, explained in detail why it rejected continued use of the FLS data. Defs.' Opp'n at 14; *see also* 73 Fed. Reg. at 77,173 (prefacing a lengthy discussion of the shortcomings of the FLS data by explaining that "the [DOL] has concluded that in light of the current prevalence of undocumented workers in the agricultural labor market, AEWRs derived from OES survey data will be more reflective of actual market wages than [AEWRs derived from] FLS data"). Furthermore, the DOL responded to several alternative methodologies suggested during the commenting period. *See, e.g.*, 73 Fed. Reg. at 77,172; *id.* at 77,174. It is clear that the DOL not only considered alternatives, but explained why it rejected the relevant ones. *See id.* at 77,173-77.

Lastly, the plaintiffs argue that the four-level structure of the new wage system is arbitrary and capricious because it will artificially depress farmworkers' wages. Pls.' Mot. at 22. The crux of this argument is the plaintiffs' contention that the DOL did not consider that "unlike skilled guestworkers, who fill occupations that require a spectrum of skills, experience, and responsibility, the vast majority of H-2A workers perform crop work, which is largely

9

homogeneous." *Id*. at 24. The defendants respond that the four-level system is also utilized in conjunction with the H-2B program, which "involves low skilled jobs similar to those at issue in the H-2A program." Defs.' Opp'n at 30; *see also* 8 U.S.C. § 1101(a)(5)(H)(ii)(b).

As they do with respect to the DOL's use of OES data, the plaintiffs claim that the DOL's use of the four-level system does not further the agency's objectives. *See* Pls.' Mot. at 26-29. The defendants maintain that the DOL did articulate its basis for implementing the four-level system, including how the system furthers the DOL's objectives. Defs.' Opp'n at 28; *see also* 73 Fed. Reg. at 77,176-77. Initially, the DOL explained that it believed it was mandated by Congress to use a tiered system because it chose to use the OES data. *See id*. at 77,176 (noting that, based on § 212(p)(4) of the INA, the DOL believed that it was required to "supply wages at the four separate skill levels"). The DOL has since abandoned that position; however, the defendants still maintain that the choice to utilize a four-level system was not arbitrary and capricious and state that the DOL considered all relevant factors when making the initial decision to use such a system. Defs.' Opp'n at 29. For instance, the DOL explained its familiarity with a four-level wage system and its understanding that because the four levels are "tied to skills and experience," the tiered system would "add further precision to the AEWRs, thus serving the [DOL's] . . . objectives." 73 Fed. Reg. at 77,173. Responding to a commenter who disagreed with the implementation of a tiered system, the DOL stated that "[u]sing a single average wage rate for all jobs performed within a particular occupational category ignores the fact that certain jobs require higher levels of experience and skill, and may adversely affect U.S. workers who are capable of performing such jobs." *Id*. It went on to note that the "skill level precision [of the four-level system] complements the geographic and occupational specificity of the OES wage estimates" and to observe that "if the [DOL] failed to set higher [AEWRs for] jobs requiring

greater skills and experience, U.S. workers capable of performing such jobs might find their 'true market' wages undercut by employers' ability to fill the jobs with H-2A workers making merely average wages." *Id*. It is thus clear to the court that the DOL did consider whether and how skill disparities would affect the AEWRs.

The court feels compelled to note that in order to withstand judicial scrutiny, the DOL's actions need not be the "the only permissible construction that [it] might have adopted," *Chem. Mfrs. Ass'n v. Natural Res. Def. Council, Inc.*, 470 U.S. 116, 125 (1985), nor may the court substitute its own judgment for that of the DOL, *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43; *Mich. Citizens for an Indep. Press v. Thornburgh*, 868 F.2d 1285, 1293 (D.C. Cir. 1989) (explaining that "[t]he rationale of *Chevron* is also grounded in the principle that the political branches of the government, rather than the judiciary, should make policy choices"); *see also Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1811 (2009) (concluding that an agency "need not demonstrate to a court's satisfaction that the reasons for [a] new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates"); *Trinity Broad. of Fla., Inc.*, 211 F.3d at 627 (noting that "[a] challenge to an agency's interpretation of its own regulation . . . turns not on whether the *challenger* has articulated a rationale to support its interpretation, but on whether the *agency* has offered an explanation that is reasonable"). Accordingly, the court holds that the December 2008 Rule is not arbitrary or capricious and denies the plaintiffs' motion for summary judgment.

### C. The Court Orders Further Briefing on the Status of the Plaintiffs' Claims

In their opposition to the plaintiffs' motion, the defendants ask that the court "dismiss the relevant portions [of] Plaintiffs' First Amended Complaint." Defs.' Opp'n at 31. The defendants did not, however, file a cross-motion for summary judgment and the plaintiffs did not address this one-line request in their reply. *See generally* Pls.' Reply. Accordingly, the court orders the parties to provide additional briefing on the status of those counts in the plaintiffs' amended complaint challenging the DOL's reliance on the OES data and the use of a four-level wage system in determining the AEWRs.

### IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion for partial summary judgment and orders further briefing on the status of the plaintiffs' claims at issue in the motion. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 22nd day of March 2010.

RICARDO M. URBINA
United States District Judge